UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
Cal Bar Number 171701
11620 Wilshire Blvd. Ste. 900
Los Angeles, California 90025
Tele 310.887.1837
Email joe@ulawoffices.com

Attorneys for Plaintiff, JOSEPH R.
MEEHAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH R. MEEHAN,<br><br>Plaintiff,<br><br>vs.<br><br>PELLE TSICHLIS aka PELLE PRIMEAU,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>1. Libel<br>2. Libel Per Se<br>3. Trade Libel<br>4. False Light<br>5. Intentional interference with Prospective Economic Advantage<br>6. Negligent Interference with Prospective Economic Advantage<br>7. Intentional Infliction of Emotional Distress<br>8. Negligent Infliction of Emotional Distress<br>9. Permanent Injunction<br>10.    Declaratory Relief |

Plaintiff, JOSEPH R. MEEHAN, an individual, hereby, by and through

his counsel of record, allege as follows:

////

## I. <u>JURISDICTION AND VENUE</u>

1. This court has original jurisdiction under 28 U.S.C. §1332, because all Plaintiffs are citizens of the state of California and defendant are citizens of states other than the state of California.  Additionally, the amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interests as more specifically plead *infra*.

2. Venue is proper under U.S.C. §1391(b)(2), because a substantial amount of the events and omissions giving rise to the claim occurred in the Central District of California, and otherwise were knowingly directed at harming a citizen of the State of California and the citizen's ability to take part in his occupation within the State of California, as more specifically plead *infra*.

## II. <u>PARTIES</u>

3. Plaintiff, JOSEPH R. MEEHAN (**Meehan** or **Plaintiff**) is, and was, at all times relevant, domiciled in Los Angeles, California and thus a citizen of California. Plaintiff is referred to in the complaint herein by "Joey Ryan" which is one of Plaintiff's professional wrestling pseudonym or persona.

4. Pelle Tsichlis (**Defendant**) also known as Pelle Primeau, is, and was at all relevant times, domiciled in the State of Pennsylvania and thus a citizen of the State of Pennsylvania.

## III. <u>FACTS COMMON TO ALL CLAIMS</u>

5. In early 2000, Plaintiff began training to become a professional wrestler of the kind that is a theatrical performance as opposed to the competitive Olympic style Greco-Roman and freestyle wrestling.

6. Before making his debut, Plaintiff spent approximately seven months training, which included fitness training, learning wrestling moves and learning how to develop a character and persona that an audience would find entertaining, among other things.

7. Plaintiff made his professional wrestling debut on or about September 2000.

8. Plaintiff wrestled using various names, personas and characters, with his most notable being that of "Joey Ryan". The character and persona of "Joey Ryan" was created and used in wrestling shows by Plaintiff beginning on or about 2001.

9. Plaintiff was also involved in wrestling promotions and in one instance was one of six founders of a successful Southern California promotions called Pro Wrestling Guerrilla, known as "PWG".

10. Plaintiff formed and is the principal of "Bar Wrestling" wherein the wrestling shows promoted by Bar Wrestling would be held in various bars in Southern California, including and notably, a popular establishment called the Bootleg Theater in Los Angeles that is also a popular social venue, American Legion Hall in Baldwin Park and Glass House in Pomona.

11. Any and all persons, including defendant, who know Plaintiff and the wrestling character "Joey Ryan", knows that the two are related to, associated with, principals of and owners and promoters of Bar Wrestling and that Bar Wrestling is a Los Angeles, California based promotion that operates in Los Angeles, California.

12. In addition to promotions, Plaintiff is, and was, a talented and entertaining wrestler and has made wrestling appearances in some of the more nationally recognized promotions, including World Wrestling Entertainment (**WWE**) and Ring of Honor (**ROH**), Lucha Underground (**Lucha)** and Impact Wrestling (**Impact**).

13. Through the years "Joey Ryan" became a popular wrestling character and thus on or about 2011, ten years after Plaintiff's creation of "Joey Ryan", Plaintiff produced merchandise that Plaintiff would sell at wrestling

shows and on his website, for example, socks, t-shirts, sweatshirts, hats, toys, pins, comic books, autograph pictures, etc. that depict the "Joey Ryan" likeness, posed and in action.

14.    Having the ability to derive income from selling merchandise is one of the goals of professional wrestlers and is common for professional wrestlers after the wrestler achieves a higher level of popularity, which would be a market indicator on determining the probability of success of merchandise sales and justify incurring the cost of production.

15.    For the past twenty years, Plaintiff spent a great deal of resources, including, time and money, in promoting himself as a wrestler and promoting his wrestling shows, including Bar Wrestling, as well as developing innovative ways to keep his wrestling character "Joey Ryan" popular and/or interesting to the wrestling community.

16.    The popularity of a wrestler may be determined by how many persons are interested in the wrestler's activities and thoughts. Over the last fifteen years or so "social networking" or "social media" applications and websites have been one of the go-to indicators of the level of popularity and public interest in persons and subject matters.

17.    Plaintiff has performed in twelve different countries and over half of the United States. Beginning in 2016, Plaintiff's popularity and interest have grown to performing in more than two hundred events per year.

18.    Twitter is a social networking or social media service where users can publish or post messages and statements in order to interact with other users. The messages are called "tweets". Registered users can publish or post messages and statements, but non-registered users can only read them. Unless the registered users change the default setting, tweets can be read by any person who can access twitter.com. That is to say Twitter is not an application that is meant to make the user's messages more

private. In the instant case the defendant had, and has, her Twitter messages, i.e., tweets, retweets, replies, and likes, accessible and displayed to any person who can access Twitter.

19.     Twitter also permits account holders to "follow" each other so that each user can be directly notified of posts made by other accountholders.

20.     Twitter explains what a "Like" is in its "Help Center" webpage, "Likes are represented by a small heart and are used to show appreciation for a Tweet. You can view the Tweets you've liked from your profile page by clicking or tapping into the Likes tab."

21.     Twitter explains what a "Retweet" is in its "Help Center" webpage, "A Retweet is a re-posting of a Tweet. Twitter's Retweet feature helps you and others quickly share that Tweet with all of your followers. You can Retweet your own Tweets or Tweets from someone else. Sometimes people type 'RT' at the beginning of a Tweet to indicate that they are re-posting someone else's content. This isn't an official Twitter command or feature, but signifies that they are quoting another person's Tweet." As such, resending messages to the public and other users are made by the volitional act of the Twitter accountholder. Defendant's retweets were made by the volitional act of the defendant.

22.     Generally, a hashtag, i.e., "#", that is followed by specific characters make content more discoverable on social media platforms and assist in engaging with other social media users based on a common theme or interest. Clicking on or searching any hashtag directs a user to every social media post using the same hashtag, whether Twitter, Instagram, Facebook, etc. Twitter explains what a hashtag is in its "Help Center" webpage,

>     A hashtag—written with a # symbol—is used to index keywords or topics on Twitter. This function was

created on Twitter, and allows people to easily follow topics they are interested in.

Using hashtags to categorize Tweets by keyword

• People use the hashtag symbol (#) before a relevant keyword or phrase in their Tweet to categorize those Tweets and help them show more easily in Twitter search.

• Clicking or tapping on a hashtagged word in any message shows you other Tweets that include that hashtag.

• Hashtags can be included anywhere in a Tweet.

• Hashtagged words that become very popular are often trending topics.

23. Instagram is another social networking or social media service that allows users to upload videos and photos and uses hashtags to connect users in the same manner as Twitter. When one user wants to check on and routinely get updates on another Instagram account holder, the user can "follow" another Instagram user, much like Twitter.

24. Instagram uses what it calls "stories" for Instagram accountholders to more closely directly connect with their followers. Stories are posts of videos, photos and statements made by the Instagram account holder that are made directly available to the Instagram accountholder's followers and remain available for twenty-four hours. After an item is posted to the accountholder's story, those following are notified of the story post.

25. Up until June 2020 Plaintiff had 157,000 followers on his Instagram account and 143,000 followers on his Twitter account.

26. Plaintiff has a Twitter "handle" of "JoeyRyanOnline", which is to say that such is the manner in which Plaintiff is identified in his Twitter social media account. The Twitter handle is usually identified by the characters following "@". Additionally, a social media "handle" is the manner in which a person is identified in the social media application/website.

27.    In or around June 2020, "#SpeakingOut" is a social media trend and community that is being used to accuse wrestlers, promotors, personalities and journalists of sexual misconduct.

28.    Patreon is website or platform that allow artists and creators to publish content, e.g., videos', photos, etc. and also allows users to interact through chat, for example, by paying monthly membership fee. By paying the membership fee persons become "patrons". Plaintiff is and was a member of Patreon and does, and did, have subscribers who paid Plaintiff monthly membership fees that paid for access to Plaintiff's posted videos, photos, media, etc.

29.    Cameo is website to create income stream. As Cameo.com describes on its "Frequently Asked Questions" webpage, "Cameo operates the CAMEO™ Marketplace — through our website and app — that lets fans book a personalized video shout-out — a CAMEO video — from their favorite talent. Our mission is to create the most personalized and authentic fan experiences in the world."

30.    As to all of the defendant's conduct above and below described, specifically since defendant has published his statements on social networking sites, Plaintiff has,

      a. Lost followers on his Twitter account of at least 11,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

      b. Lost followers on his Instagram account at least 8,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

      c. Lost venues for his Bar Wrestling promotions, including Bootleg Theatre in Los Angeles, American Legion Hall in Baldwin Park and Glass House in Pomona;

Complaint for Damages and
Demand for Jury Trial

d. Lost revenues from Bar Wrestling in the amount of $1,500.00 per month from distribution and streaming services and $2,000.00 per event with two events per month;

e. Lost revenues from merchandising in the amount of $1,000.00 per month;

f. Lost revenues in his Patreon account in the amount of $3,000.00 per month;

g. Lost revenues in his Cameo account in the amount of $500.00 per month;

h. Lost revenues from Twitch account in the amount of $1,000.00 per month plus subscription shares and tips from subscribers;

i. Lost revenues from Wrestling Performance Bookings of $8,000.00 to $10,000.00 per month.

## IV. **FALSE STATEMENTS MADE ABOUT PLAINTIFF**

31. Defendant, Pelle Tsichlis (**Defendant**), also known as Pelle Primeau, performs as a professional wrestler and entertainer.

32. As of September 10, 2020, Defendant had 277 "Following" and 545 "Followers" on his Twitter account wherein he used the handle "primeau31".

33. On or about June 20, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "You actively pursued my fiance and were instrumental in helping ruin my life. You are the lowest form of human scum on the face of the earth. You're going to burn. Your time is up. And you fucking deserve it. Twitter.com/JoeyRyanOnline…" (**Defendant's First Statement**)

34. Defendant's First Statement was published at the beginning of the #SpeakingOut movement. Defendant's Frist Statement was not intended by Defendant to "speakout" about a sexual assault but so that Defendant

could be part of, and be a participant in, a movement that was gaining traction in the professional wrestling community. Defendant intended on being included in the class of victims that encompassed the #speakingout movement, albeit Defendant's intentions were misplaced. The #SpeakingOut movement did not include persons whose partners committed infidelities with unknowing participants in infidelity. Defendant's First Statement was made to cast Plaintiff in a false light, for example, that Plaintiff was a "homewrecker" of some sort. Although the incident of his partner cheating on Defendant eight years prior to Defendant's statements herein described and Plaintiff did have a sexual encounter with the woman Defendant refers to in Defendant's First Statement, Plaintiff did not "pursue" the woman and moreover had no idea that the woman was in any way engaged or was in a committed relationship with Defendant, or any other person.

35.   As of June 20, 2020, Defendant's First Statement was "Retweeted" at least 215 times, with 962 "Likes".

36.   On or about June 20, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "o.k. I have something new to share. If you know me I grew up in Philly, [sic] have a lot of friends there. This is [sic] account from a friend of mine whom [sic] has zero relation to the wrestling industry that looked at my Twitter tonight 2015 #SpeakingOut #JosephRyanMeehan #JoeyRyan" and then attached what appears to be a series of text messages between Defendant and a purported unidentified woman. The unidentified woman described a sexual encounter with Plaintiff wherein Plaintiff made sexual advances without the consent of the unidentified woman. The attached text messages from the unidentified woman states, "I met up with him on a

Complaint for Damages and
Demand for Jury Trial

tinder date!!!" Defendant texted, "…what. Joey Ryan??". The unidentified woman texted, "Like when I first got my apartment and he kept trying to come to my house and I had him kicked out of a bar because he kept touching my legs and trying to go up my skirt! …I'm SO glad I got him kicked out. It sounded so familiar like I know this person. Yup. Fucking Tinder. 2014? 2015? Maybe. He said he was traveling and I was like okay whatever, let's go out for drinks and if [sic] course, sweeney's cause it was close and if I need someone kicked out they're gone and flagged. …That's terrifying. He was pushy af [as fuck] and kept touching me and making me feel so weird." (**Defendant's Second Statement**)

37.     Defendant's Second Statement was false in that Plaintiff never went on a date through Tinder (dating application) in Philadelphia at bar called Sweeny's in 2014 or 2015. Plaintiff has never used or been a member of the application Tinder. Defendant fabricated the messages with the unidentified woman in order to be a part of the #SpeakingOut movement, inter alia, in order to stay connected to the professional wrestling community.

38.     The Inqusitr is a news and media website founded on or about 2007.

39.     On or about June 22, 2020, in response to Defendant First Statement and Defendant Second Statement, the publication *Inquisitr* stated "In a series of tweets posted early Sunday morning, independent wrestler Pelle Defendant expressed anger over Ryan's statement, accusing the Impact mainstay [i.e., Plaintiff] of "actively" pursuing his fiancée and "helping ruin [his] life" in the process. In these posts Defendant claimed Ryan did this by constantly sending selfies to the woman, telling her a variety of sexually suggestive things, and getting her involved in his hard-partying lifestyle."

Complaint for Damages and
Demand for Jury Trial

40.    Defendant was fully aware in making Defendant's First Statement and Defendant's Second Statement that others would republish the statements because of the #SpeakingOut movement.

### 1.    Posts September 3, 2020

41.    On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "It's hilarious that y'all turned off replies but we haven't forgotten that @joeyryanonline is a sexual abuser. twitter.com/BarWrestling/s…" (**Defendant's Third Statement**)

42.    Defendant's Third Statement falsely accuses Plaintiff of being a person who commits sexual abuse and was intended by Defendant to cast Plaintiff in a false light. By adding Plaintiff's promotion Bar Wrestling to Defendant's Third Statement, Defendant implied that Bar Wrestling was promoted and operated by a person who commits sexual abuse and thus must not be supported by any person, financially or otherwise, and thus prevent Plaintiff from earning income through Bar Wrestling.

43.    As of September 5, 2020, Defendant's Third Statement was "Retweeted" at least 5 times, with 19 "Likes

44.    On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement in an attachment showing a photo of a sign stating "I'm with a rapist" next to a drawing of a hand/finger directing the reader to another screenshot of a post made by Plaintiff on Plaintiff's YouTube channel thanking supporters for visiting Plaintiff's YouTube channel and watching wrestling videos that Plaintiff posted, that is to say Plaintiff was thanking his customers. (**Defendant's Fourth Statement**)

45.     By adding Plaintiff's YouTube channel to Defendant's Fourth Statement, Defendant implied that Plaintiff's business through YouTube was operated by a person who had committed the felony of rape and must not be supported by any person, financially or otherwise and thus prevent Plaintiff from earning income through YouTube.

46.     As of September 9, 2020, Defendant's Fourth Statement was "Retweeted" at least 3 times, with 6 "Likes".

47.     On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "reminder that Joey Ryan (Joseph Meehan) is an accused serial sexual predator and that watching any of the videos uploaded onto his YouTube channel @BarWrestling playlist is giving him money." Defendant then attached a screenshot of a post made by Plaintiff on Plaintiff's YouTube channel thanking supporters for visiting Plaintiff's YouTube channel and watching wrestling videos Plaintiff posted. (**Defendant's Fifth Statement**)

48.     By adding Plaintiff's YouTube channel and promotion Bar Wrestling to Defendant's Fifth Statement, Defendant directly stated that that Plaintiff's business through YouTube and business related to Bar Wrestling was operated by a serial sexual predator, that included crimes classified as felonies, and must not be supported by any person, financially or otherwise and thus prevent Plaintiff from earning income through YouTube and Bar Wrestling.

49.     As of September 9, 2020, Defendant's Fifth Statement was "Retweeted" at least 34 times, with 59 "Likes".

50.     On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "He's bragging about

how many views he's getting. Piece of garbage. Report that channel."
Defendant then attached a screenshot of a post made by Plaintiff on
Plaintiff's YouTube channel thanking supporters for visiting Plaintiff's
YouTube channel and watching wrestling videos Plaintiff posted and then
stated, "It's better if we completely de-platform Joey Ryan instead of him
reposting this until we forget. If you're not blocked go to @BarWrestling on
Twitter and report them. Go to their Youtube and report it. Don't let this
predator make another dime." (**Defendant's Sixth  Statement**)

51.    Defendant's Sixth Statement is an unequivocal call to action by
defendant to his followers and any person who happens on Defendant's
Twitter account to prevent Plaintiff from earning income through YouTube
and Bar Wrestling.

52.    As of September 9, 2020, Defendant's Sixth Statement was Replied to
1 time, "Retweeted" at least 18 times, with 36 "Likes".


53.    On or about September 3, 2020, Defendant used his Twitter account
with the handle "primeau31" to make the statement, "Keep the trash out of
wrestling. Hey @BarWrestling – you're the trash" with an attachment of a
screenshot of a post made by Plaintiff on Plaintiff's YouTube channel
thanking supporters for visiting Plaintiff's YouTube channel and watching
wrestling videos Plaintiff posted. (**Defendant's Seventh  Statement**)

54.    Defendant's Seventh Statement is an unequivocal call to action by
defendant to his followers and any person who happens on to Defendant's
Twitter account to prevent Plaintiff from earning income through YouTube
and Bar Wrestling

55.    As of September 9, 2020, Defendant Seventh Statement was
"Retweeted" at least 2 times, with 16 "Likes".

56.   On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "THEY CAN'T HANDLE THE LOGIC FOLKS" then attached Twitter messages between Primeau, using the name Pelle Defendant and a Twitter user named Willie Gerardo (**Gerardo**) who gave support to Plaintiff, "no you sound more like your bitter!! Yeah if he messed up he did but move on!!" Defendant replied "Yes, I should move on and not the serial sexual assaulter [referring to Plaintiff] that denies the wrongdoing. How embarrassing for you to have no response to sound logic and rational thought." Gerardo responded, "Good luck hopefully don't see you in a posting on here or a Mugshot!!" Defendant responded, "No worries I don't molest women so I'll be good!" (**Defendant's Eighth  Statement**)

57.   Defendant's Eighth Statement was false in accusing Plaintiff of molesting women. Plaintiff has never molested any woman. On the same day Defendant had accused Plaintiff of committing sexual crimes against women and in Defendant's Eighth Statement the sexual crime of molestation, which is a sexual assault and battery upon a woman without consent. Defendant's reference to molesting women was meant to and was understood by the readers of Defendant's Eighth Statement that Plaintiff had committed similar sexual crimes as in Defendant's past and future statements herein and inter alia was meant to prevent Plaintiff from earning any income from Plaintiff's business ventures related to professional wrestling.

58.   As of September 9, 2020, Defendant Eighth Statement was Replied to 4 times and had 6 "Likes".

59.   On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "If you have Twitter

and want to signal boost I made a shareable post – the traction is good on Twitter rn [right now] but I'm not seeing much on Facebook re Meehan and Bar Wrestling" and then created a link to a Defendant's Twitter page that made the further statement "Pelle Primeau  *** Twitter friends and family, especially non-wrestling business: we need your help urgently in a signal boost, marking this public and shareable*** yes man is Joseph Ryan Meehan, formally "Joey Ryan'. He was removed from wrestling after over 20 women came out with their stories of being sexually assaulted (to put it very mildly) buy this man. His serial predatory actions have been well documented over the course of the last 3 months and wrestling is attempting to move on from his brand after the stories have come out. He is the owner of Bar Wrestling, and have recently begun an ad campaign on social media for a YouTube channel leading you to believe it's Bar Wrestling as its own private entity, uploading their entire match library for free (with YouTube ads) – THE LINK WILL TAKE YOU TO THE "JOEY RYAN" YOUTUBE PAGE AS HE HAS ALL THE MATCHES UPLOADED THERE IN AN ATTEMPT TO MONETIZE AND MAKE MONEY OFF OF PROFESSIONAL WRESTLING TO THOSE WHO WOULDN'T KNOW OTHERWISE. Please, if you know ANYONE who casually watches wrestling here and there when they're bored on YouTube, or watch weekly on TV, SHARE this status and let me know to NOT watch Bar Wrestling on YouTube, do NOT allow Joe Meehan to make a DIME off of professional wrestling any more. Please help us stop this man every time he tries to worm his way back." The Twitter page further attaches screenshots of Plaintiff's social media page that has photos of Plaintiff. (**Defendant's Ninth Statement**)

60.    Defendant's Ninth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's

Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Statement taken as whole, vis-à-vis the many accusatory statements by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Ninth Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Ninth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

61.   As of September 9, 2020, Defendant's Ninth Statement was "Retweeted" at least 3 times, with 2 "Likes".

62.   On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "It's better if we completely de-platform Joey Ryan instead of reposting this until we forget. If you're not blocked go to @BarWrestling on Twitter and report them. Go to their Youtube and report it. Don't let this predator make another dime." (**Defendant's Tenth Statement**)

63.   Defendant's Ninth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling.

64.   As of September 9, 2020, Defendant's Tenth Statement  was Replied to 3 times, "Retweeted" at least 34 times, with 89 "Likes".

65.    On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Even if you were to use AdBlock or what the more view this has the more likely it is to be other people's recommended videos who might not know and he will still get paid. He does not deserve to get any more from a scene he took advantage of and harmed so much. Joey Ryan owns and operates Bar Wrestling and is putting ads on these videos featuring stars of AEW, WWE, and elsewhere to get money since he lost all his jobs because is a sexual predator (ewrestlingnews.com/news/15-secual…) Supporting this is supporting him. Don't watch." (**Defendant's Eleventh Statement**)

66.    Defendant's Eleventh Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Statement taken as whole, vis-à-vis the many accusatory statements by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Eleventh Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Twelfth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

67.    As of September 9, 2020, Defendant's Eleventh Statement  was "Retweeted" at least 38 times, with 72 "Likes".

68.    On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Joey Ryan owns and operates Bar Wrestling and is putting ads on these videos featuring stars

of AEW, WWE, and elsewhere to get money since he lost all his jobs because is a sexual predator (ewrestlingnews.com/news/15-sexual…) Supporting this is supporting him. Don't watch." (**Defendant's Twelfth Statement**)

69.     Defendant's Twelfth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Statement taken as whole, vis-à-vis the many accusatory statements by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Twelfth Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Twelfth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

70.     As of September 9, 2020, Defendant's Twelfth Statement  was Replied to 3 times and "Retweeted" at least 133 times, with 170 "Likes".

71.     On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Hi @BarWrestling is there a reason you blocked replies?? Maybe because you're Joe Meehan trying to get royalties? Don't worry we'll make sure this doesn't work (handshake emoji) htwitter.com/BarWrestling/s…" (**Defendant's Thirteenth Statement**)

72.     Defendant's Thirteenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income related to Bar

Wrestling. The handshake emoji was essentially saying "let's all agree" to terminate Plaintiff's income stream from professional wrestling forever.

73. As of September 9, 2020, Defendant's Thirteenth Statement had 7 "Likes".

74. On or about September 3, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "as a reminder Joey Ryan ran Bar Wrestling and these videos are straight up on his YouTube account [sic] watching these matches, no matter how many of your favorites are in them, generates revenue for an accused serial sexual predator twitter.com/BarWrestling/s…" (**Defendant's Fourteenth Statement**)

75. Defendant's Fourteenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Statement taken as whole, vis-à-vis the many accusatory statements by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Twelfth Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Twelfth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

76. As of September 9, 2020, Defendant's Fourteenth Statement was Replied 1 time, "Retweeted" at least 12 times, with 16 "Likes".

### 2. Posts September 4, 2020

77.    On or about September 4, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement using attachments that purported to be screenshots of Twitter messages between Defendant using the name Pelle Tsichils and another Twitter user named Steve Robbins (**Robbins**). Robbins expressed support for Plaintiff in the message with, "I think it is sad that you [Defendant] can't move on from something that your ex did years ago. It's okay buddy time heals all wounds. …I think you're pathetic for hiding behind this warrior gimmic because your girl cheated on you." Defendant responded,  "We all know he's [referring to Plaintiff] a sexual predator" and "Have fun grabbing some of the AMAZING Mexican food from that taco truck with Joe tonight bro!" (**Defendant's Fifteenth Statement**)

78.    The reference to the "taco truck" was a reference by Defendant to an accusation against Plaintiff by an accuser that before Plaintiff assaulted the accuser, Plaintiff  "took me [the accuser] straight to a bar where I only had a few drinks (strong mixed cocktails) and it got me pretty messed up".

79.    Plaintiff published a video on youtube.com on or about July 18, 2020 refuting the false accusations made by another person. In the video Plaintiff explained that the "bar" where the accuser had drinks with Plaintiff served food from a taco truck in the parking lot where the two also ate dinner. The accuser then stated that Plaintiff assaulted her after dinner and drinks. Defendant's Fifteenth Statement implied, that (1) Robbins and Plaintiff planned to assault women after getting them drunk at the "taco truck"; that (2) Robbins was in a relationship with Plaintiff and enjoyed getting assaulted by Plaintiff in the manner Hasler falsely claimed she was assaulted; and, or, that (3) Defendant was warning Robbins not to meet Plaintiff at the taco truck or Plaintiff would assault him.

80.    The implication was false and since Plaintiff never assaulted any person and did not use alcohol or other intoxicant to assault women.

81.    As of September 9, 2020, Defendant's Fifteenth Statement  was Replied to 1 time and had 1 "Likes".

### 3.    Posts on August 31, 2020

82.    On or about August 31, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Hi if you're new here this morning don't allow Joe Meehan back in professional wrestling (thumbs up emoji)(4 handshake emoji's)" The post included a direct link to Defendant's Video, i*nfra*, Defendant posted on YouTube and an attachment that when clicked would play Defendant's Video while using the Twitter application. (**Defendant's Sixteenth Statement**)

83.    Defendant's Sixteenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Statement taken as whole, vis-à-vis the many accusatory statements by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Sixteenth Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Sixteenth is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

84.    As of September 9, 2020, Defendant's ???? Statement  was Replied to 1 time with 2 "Likes".

### 4.    Posts on August 30, 2020

85.    On or about August 30, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Yknow I'm having a conversation with a friend RN and honestly – if you're working on a show that Joe Meehan gets booked on, and you don't cancel that date you're every bit as guilty and accountable as the promotor. You can @ me on this one, I got off work today." (**Defendant's Seventeenth Statement**)

86.    Defendant's Seventeenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Defendant's Seventeenth Statement taken as whole, vis-à-vis the many accusatory statements (here "guilty" and "accountable") by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Seventeenth Statement that Plaintiff had committed numerous sexual crimes. Plaintiff has never committed the acts that Defendant accused Plaintiff of committing. Defendant's Seventeenth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

87.    As of September 9, 2020, Defendant's Seventeenth Statement  was Replied to 1 time and Retweeted 4 times with 11 Likes.

### 5.    Posts on August 26, 2020

88.    On or about August 26, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Please do not forget Bar Wrestling was founded and is owned by Joey Ryan. This is not them giving you "FREE wrestling" out of love I tis Joey's way to continue to

make money by putting ads on "free videos" featuring notable talent. Do not give this man your views. Twitter.com/BarWrestling/s…" (**Defendant's Eighteenth Statement**)

89.   Defendant's Eighteenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income related to Bar Wrestling forever.

90.   As of September 9, 2020, Defendant's Eighteenth Statement  was Replied to 8 time and Retweeted 238 times with 372 Likes.

91.   On or about August 26, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Hi Joe Meehan!! I hope you get some time to watch this, and everyone knows to not watch a single video from the Bar Wrestling YouTube account. (smiley face emoji) Eat shit you jerk off. I'll haunt you like a fucking ghost. (emojis)" and included a direct link to Defendant's Video, i*nfra*, he posted on YouTube. Within the same string of tweets, Defendant made the statement, "Here's evidence of another WWE performer who's engaged in preying on children online. I hope you're not okay with sponsoring a company who hand-waves this activity." (**Defendant's Nineteenth Statement**)

92.   Defendant's Nineteenth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Defendant's Nineteenth Statement taken as whole, vis-à-vis the many accusatory by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's

Nineteenth Statement that Plaintiff had committed numerous sexual crimes. Additionally, Defendant's Nineteenth Statement accused Plaintiff of committing crimes upon "children" and refers to Plaintiff as "another WWE performer". Plaintiff has never committed the acts that Defendant accused Plaintiff of committing including the accusation related to "preying on children online".  Defendant's Nineteenth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

93.    As of September 9, 2020, Defendant's Nineteenth Statement  was Retweeted 4 times time with 6 "Likes".

### 6.    Posts on August 9, 2020

94.    On or about August 9, 2020, Defendant used his Twitter account with the handle "primeau31" to make a series of statements to prevent Plaintiff from making any income in professional wrestling and attached a link to Defendant's Video, i*nfra*, he posted on YouTube. Defendant stated,

a. "Lately people have unfollowed me for calling out antisemitism in the Black community and for pointing out Joey Ryan is a horrible rapist."

b. With a link to the Defendant's Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A Responses, a Call for Action" Plaintiff stated, "Hoping to get a public commitment to never do business with Joseph "Joey Ryan" Meehan. @HeyHeyItsConrad @StarcastEvents @PWTees @ColtCabana @MartyDeRosa @CodyRhodes @TonyKhan" The persons and entities named after the "@" were all related to professional wrestling and professional wrestling promotions.

c. With a link to the Defendant's Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A

Responses, a Call for Action" Plaintiff stated, "I've never asked for anything/favors. Breaking that rule today. @GCWrestling @beyondwrestling @aiwrestling @JohnThorneAIW @Lauderdale11 @BLPMlkey @RockstarProWres @ParadigmProWres @FrelanceWres @ringofhonor @IMPACTWRESTLING @BLabelPro @TheDannyCage @4MonsterFactory @dannydemanto @ICWNHB"

d. With a link to the Defendant Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A Responses, a Call for Action" Plaintiff stated, "Calling on Accountability and Public Commitment. Looking forward to everyone's actions speaking for themselves moving forward @NWA @Billy @CWFHMarquez @ScrapDaddyAP"

e. With a link to the Defendant's Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A Responses, a Call for Action" Plaintiff stated, "@ShutupExcalibur @OfficialPWG @BeingtheElite It would be very helpful for a clarification from Pro Wrestling Guerilla on post-pandemic plans re: Joseph Meehan."

f. With a link to the Defendant's Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A Responses, a Call for Action" Plaintiff stated, "Attempting to call major independent promotions to commit publicly and unify against Joe Meehan @ryansatin @SeanRossSapp @FightfulWrestle @BleacherReport @MikePWInsider @PWInsider.com @OfficialPWI @davemeltzerWON @thewadekeller @PWTorch @WrestlingSheet"

g. With a link to the Defendant's Video and a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff and the words "A Responses, a Call for Action" Plaintiff stated, "asking for a commitment

to not shoot any shows featuring Joseph Meehan moving forward @indiewrestling @smartmarkvideo @IWTV_JP"

(**Defendant's Twentieth Statement**)

95.    Defendant's Twentieth Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Defendant's Twentieth Statement taken as whole, vis-à-vis the many accusatory by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Twentieth Statement that Plaintiff had committed numerous sexual crimes."  Plaintiff has never committed the acts that Defendant accused Defendant's Twentieth Statement is an assault on Plaintiff's right to make any form of income big or small in the professional wrestling world, past, present and future.

96.    As of September 9, 2020, Defendant's Twentieth Statement was Replied to, Retweeted and Liked multiple times.

### 7.    Posts on August 8, 2020

97.    On or about August 8, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Good Morning, I'm challenging everyone in wrestling to do the right thing together for once:" then added a link to the Defendant's Video which could immediately be viewed by clicking on a photo of Plaintiff with a red circle and red slash superimposed over Plaintiff with the words "A Responses, a Call for Action". (**Defendant's Twenty-First Statement**)

98.    Prior to publishing Defendant's Twenty-First Statement , Defendant made a series of statements using his Twitter account with the handle

"primeau31" first "Ready to shoot in 20 minutes" and added a photo of Defendant's studio showing various computer screens, including showing false accusations of women made against Plaintiff that Defendant used in the backdrop in the Defendant's Video. The next statement, "Editing". The next statement, "Rendering" and the last "Uploading". The statements were apparently intended by Defendant to create anticipation of the publishing of Defendant's Video similar to a buildup and promotion of an upcoming entertainment event. Defendant was apparently letting the world know that Defendant was making and publishing a video that would ruin Plaintiff and that was of great significance and importance to any person in professional wrestling.

99.   To make it clear that the Defendant Video was intended to damage, really destroy, Plaintiff, on August 7, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "ask if he knows he's on the tracks, the train is on its way in about an hour or so" then attached a screenshot a photo of Plaintiff identifying the photo as "Joey Ryan".

100.  As of September 9, 2020, Defendant's Twenty-First Statement  was Replied to 4 time and Retweeted 31 times with 35 Likes.

101.  On or about August 8, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Hey JoeyRyanOnline I'm sure you vanity search first thing in the morning anyway but I thought I'd help you out and send it to you. Enjoy it." Then, "Good Morning, I'm challenging everyone in wrestling to do the right thing together for once:" then added a link to the Defendant Video". (**Defendant's Twenty-Second Statement**)

102.  Defendant's Twenty-Second Statement is an unequivocal call to action by defendant to his followers and any person who happens on Defendant's Twitter account to prevent Plaintiff from earning income through YouTube, Bar Wrestling and any, and all, past, present or future ventures related to professional wrestling. The Defendant's Twenty-Second Statement taken as whole, vis-à-vis the many accusatory by Defendant of Plaintiff committing sexual crimes upon women, was understood by all readers of Defendant's Twenty-Second Statement that Plaintiff had committed numerous sexual crimes."  Plaintiff has never committed the acts that Defendant accused Defendant's Twenty-Second Statement is an assault on Plaintiff's right to make any form of income

103.  As of September 9, 2020, Defendant's Twenty-Second Statement  was Retweeted 3 times with 4 Likes.


104.  On or about August 8, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "Patreon and Cameo will be contacted this evening: Deplatforming works." (**Defendant's Twenty-Third Statement**)

105.  Patreon is a website or platforms that allow artists and creators to publish content, e.g., videos', photos, etc. and also allow users to interact through chat, for example, by paying monthly membership fee. By paying the membership fees persons become "patrons". Cameo is another interactive income stream through video messaging. Plaintiff is and was a member of Patreon and Cameo and does, and did, have subscribers who paid Plaintiff the monthly membership fees.

106.  Defendant was fully aware that Plaintiff used the platforms to generate income. Defendant statement of "deplatforming works" was an indication that Defendant intended to prevent Plaintiff from generating income

through Plaintiff's use of Patreon and Cameo, in Defendant's quest to prevent Plaintiff from realizing any income related to professional wrestling.

107.  As of September 9, 2020, Defendant's Twenty-Third Statement  was Replied to 1 time with 11 Likes.

### 8.    Posts on August 7, 2020

108.  On or about August 7, 2020, Defendant created a thirty-seven-minute video (**Defendant's Video**) that was viewed at least 808 times on YouTube by September 18, 2020. The video was posted on YouTube and made available on Twitter. In the video. Defendant sits in front of a backdrop of screenshots of many of the Defamatory Statements above listed.

109.  In Defendant's Video, Defendant was serious and was without any sense or indication that his statements were meant to be taken as a joke. In fact, Defendant screamed or spoke with a raised voice throughout the Defendant's Video and was visibly angry.

110.  In Defendant's Video, Defendant states that Plaintiff does "not [take] no for an answer" in reference to Plaintiff's sexual encounters with women and that Plaintiff "used power and influence" to assault women.

111.  In Defendant's Video, Defendant makes it clear that Defendant knows, and has known, that Plaintiff lives in Los Angeles and his lived in Los Angeles in his professional wrestling career when he said, "Especially when he is flying from So Cal. He just wants to do his work. Do his shot and then get back on the plane right back to So Cal" and when he said, "One Joseph Ryan Meehan out of Southern California"

112.  In Defendant's Video, Defendant made his intent clear about destroying Plaintiff financially, "We are taking 'Joey Ryan' away from "Joseph Ryan

Meehan" "the very least we can do is make sure that the 'Joey Ryan' brand is laid out to rest."  That is to say that Defendant was aware of the high value in the brand of "Joey Ryan" the wrestler and that Defendant intended on ruining the Joey Ryan brand to such a degree that Plaintiff could never again profit, financially or otherwise, from the "Joey Ryan brand".

113.  In Defendant's Video, after naming professional wrestlers who were in the past accused of involvement in scandal, Defendant states that those wrestlers "are still here. And are still making money off the business. Not you [referring to Plaintiff]. We're putting our foot down. We're not letting you back in the ring. I will remind professional wrestling every single day if I have to. I will get on Twitter. I will get on social media. I will email promotors. I will email bookers. …Your house of cards and your ilk, it's going to start to fall.…And if I can't do it myself. If I'm not in locker rooms myself. Then I'm calling on [names of over thirty names of persons and business entities involved in professional wrestling promotions]. …Keep him [referring to Plaintiff] out of wrestling. …Don't ever let this man have access to money from the professional wrestling business ever again. …Joseph Meehan will never step foot in your rings again."

114.  On or about August 7, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "I'm out here to make sure he never steps foot in a ring again. If that's my legacy then so be it, if Im [sic] ever remembered for anything let it be the man who held him [Plaintiff] accountable." (**Defendant's Twenty-Fourth Statement**)

115.  Defendant uses the word "accountable" to mean that Plaintiff assaulted women and committed sexual crimes against women, especially in the face of Defendant's other statements published prior to Defendant's

Twenty-Fourth Statement and on the same day when Defendant published Defendant's Video. Defendant implied that Plaintiff was going to pay for his sexual crimes against women because Defendant was intending on being the person that prevents Plaintiff from ever again engaging in professional wrestling.

116.  As of September 9, 2020, Defendant's Twenty-Fourth Statement  was had 12 Likes.

### 9.    Posts on July 18, 2020

117.  On or about July 18, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "joey ryan raped my friend! But you know, he was 'nice' when he sold you a t-shirt so I understand how hard this must be for you to believe. he raped someone I love! …" (**Defendant's Twenty-Fifth Statement**)

118.  The statement is meant to have greater impact because it is a statement of another person vouching for the credibility of the rape accusation.

119.  It is a false statement that Plaintiff committed the crime of rape upon any person in any way shape or form.

120.  As of September 10, 2020, Defendant's Twenty-Fifth Statement  was Replied to 1 time and was Retweeted 11 times with 92 Likes.

### 10.    Posts on July 19, 2020

121.  On or about July 19, 2020, Defendant used his Twitter account with the handle "primeau31" to make the statement, "@JoeyRyanOnline just watched where you talk about me. …I'm sure it is hard to remember all occasions where you tried to force yourself onto girls." (**Defendant's Twenty-Sixth Statement**)

122.  It is a false statement that Plaintiff forced himself on any person for sexual gratification.

123.  As of September 10, 2020, Defendant's Twenty-Sixth Statement  was Replied to 4 time and was Retweeted 21 times with 200 Likes..

## I.  CLAIM I
(Libel against Defendant)

124.  Plaintiff incorporates by reference paragraphs 1 through 123 as though fully set forth herein.

125.  Defendant made and published the defamatory statements as specifically described above and herein,

    a. Defendant's Second Statement;

    b. Defendant's Fourth Statement;

    c. Defendant's Fifth Statement;

    d. Defendant's Eighth Statement;

    e. Defendant's Ninth Statement;

    f.  Defendant's Eleventh Statement;

    g. Defendant's Twelfth Statement;

    h. Defendant's Fifteenth Statement;

    i.  Defendant's Sixteen Statement;

    j.  Defendant's Seventeenth Statement;

    k. Defendant's Nineteenth Statement;

    l.  Defendant's Twentieth Statement;

    m. Defendant's Twenty-Second Statement;

    n. Defendant's Twenty-Fourth Statement;

    o. Defendant's Twenty-Fifth Statement;

    p. Defendant's Twenty-Sixth Statement; and

    q. Defendant's Video

126.  Defendant used at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and

thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

127.  On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

128.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

129.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

130.  Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and

Complaint for Damages and
Demand for Jury Trial

incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

131.  Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

132.  Defendant was fully aware that Defendant defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

133.  It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent

of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

134.   Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

135.   Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

136.   Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

137.   Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

138.   The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean

that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

139.   Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

140.   Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was users, subscribers, account holders of Twitter and

had Twitter handles and thus understood how Twitter and social media websites worked.

141.   Defendant's defamatory statements caused Plaintiff to lose employment and income.

142.   Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

143.   Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

144.   Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

145.   Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## II.  CLAIM II
(Libel Per Se against defendant)

146.   Plaintiff incorporates by reference paragraphs 1 through 145 as though fully set forth herein.

147.   Defendant made and published the defamatory statements as specifically described above and herein,

a. Defendant's Second Statement;

b. Defendant's Fourth Statement;

c. Defendant's Fifth Statement;

d. Defendant's Eighth Statement;

e. Defendant's Ninth Statement;

f. Defendant's Eleventh Statement;

g. Defendant's Twelfth Statement;

h. Defendant's Fifteenth Statement;

i. Defendant's Sixteen Statement;

j. Defendant's Seventeenth Statement;

k. Defendant's Nineteenth Statement;

l. Defendant's Twentieth Statement;

m. Defendant's Twenty-Second Statement;

n. Defendant's Twenty-Fourth Statement;

o. Defendant's Twenty-Fifth Statement;

p. Defendant's Twenty-Sixth Statement; and

q. Defendant's Video

148.  Defendant used at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

149.  On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

150.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

151.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

152.  Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

153.  Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

154.  Defendant was fully aware that Defendant defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

155.  It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

156.  Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on

Complaint for Damages and
Demand for Jury Trial

women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

157.  Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

158.  Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

159.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

160.  The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

161.  Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including

that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

162. Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

163. Defendant's defamatory statements caused Plaintiff to lose employment and income.

164. Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

165. Plaintiff's personal and professional reputation were harmed as a result

1
2
3

of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

4
5

166.  Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

6

167.  Plaintiff was damaged as set forth below and as follows,

7
8
9
10
11

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

12

WHEREFORE, Plaintiff prays for judgment as set forth below.

13

### III.  CLAIM III
(Trade Libel against defendant)

14

15
16

168.  Plaintiff incorporates by reference paragraphs 1 through 167 as though fully set forth herein.

17
18
19
20
21
22
23
24
25

169.  Defendant made and published the defamatory statements as specifically described above, which among other things falsely accused Plaintiff of committing and rendering unprofessional and substandard services as a professional wrestler, wrestling promotor, and additionally tarnished the "Joey Ryan" brand name. Plaintiff has spent over twenty years in developing his brand by promoting his wrestling, personality, and character portrayal of "Joey Ryan" more immediately, through social media websites, including Twitter, Facebook, YouTube, Patreon and Cameo. Patreon and Cameo garnered monthly revenues to Plaintiff..

26
27

170.  Defendant made and published the defamatory statements as specifically described above and herein,

28

a. Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

b. Defendant's Video

171.  Defendant used at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

172.  On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

173.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

174.  Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to

thousands of Twitter's membership, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

175. Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

176. Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

177. Defendant was fully aware that Defendant defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-

wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

178.  It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

179.  Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

180.  Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

181.  Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

182.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and

investigation as to whether or not the defamatory statements were true or false.

183.  The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

184.  Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (3) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

185.  Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to

others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

186.  Defendant's defamatory statements caused Plaintiff to lose employment and income.

187.  Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

188.  Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

189.  Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

190.  Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

///////

Complaint for Damages and
Demand for Jury Trial

# IV.  CLAIM IV
(False Light against defendant)

191.  Plaintiff incorporates by reference paragraphs 1 through 190 as though fully set forth herein.

192.  Defendant published the defamatory statements as specifically described above and incorporated herein, as

   a. Defendant's Second Statement;

   b. Defendant's Fourth Statement;

   c. Defendant's Fifth Statement;

   d. Defendant's Eighth Statement;

   e. Defendant's Ninth Statement;

   f.  Defendant's Eleventh Statement;

   g. Defendant's Twelfth Statement;

   h. Defendant's Fifteenth Statement;

   i.  Defendant's Sixteen Statement;

   j.  Defendant's Seventeenth Statement;

   k. Defendant's Nineteenth Statement;

   l.  Defendant's Twentieth Statement;

   m. Defendant's Twenty-Second Statement;

   n. Defendant's Twenty-Fourth Statement;

   o. Defendant's Twenty-Fifth Statement;

   p. Defendant's Twenty-Sixth Statement; and

   q. Defendant's Video

and the statements showed Plaintiff in a false light.

193.  The false light was highly offensive to a reasonable person in Plaintiff's position, because Plaintiff did not rape, assault, commit sexual battery on any person.

194. Defendant knew that the publication of the defamatory statements would create a false impression that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

195. Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements.

196. Prior to publishing the defamatory statements, defendant knew that publishing the defamatory statements would create a false impression about Plaintiff.

197. Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

198. Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

199. Plaintiff sustained reputational and financial harm as result of defendant's publication of the defamatory statements.

WHEREFORE Plaintiff requests that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the

1  defamatory statements and any equitable relief based on principles that are

   fair and just.

2      WHEREFORE, Plaintiff prays for judgment as set forth below.

3                          **V.  CLAIM V**

4      (Intentional Interference with Prospective Economic Advantage against
                                defendant)

5  200.  Plaintiff incorporates by reference paragraphs 1 through 199 as though

6      fully set forth herein.

7  201.  In October 2019, it was widely reported in the wrestling community,

8      including through an online news reporting agency called

9      SoCalUncensored.com, that Plaintiff "signed a multi-year contract with

10     Impact Wrestling. This marks his return to the promotion, as he was

11     previously under contract with the company from 2012 to 2013." Impact

12     Wrestling is one of the larger and more successful wrestling promotions

13     that are more recognized by the general public, for example like WWE. As

14     such, it was well known that the "Joey Ryan" character was a commodity

15     sought after by one of the top wrestling promotions, i.e., believed to be

16     entertaining and would draw viewer interest. Although Plaintiff was "under

17     contract" with Impact Wrestling, Plaintiff was free to pursue his ventures

18     and promotions as an independent wrestler, which is not the usual case.

19     With the exception of Plaintiff's Impact contract, usually the independent

20     wrestler is not free to wrestle with, and in, other promotions, without the

21     consent of the promotion. The professional wrestler is no longer

22     "independent" and is disincentivized from pursuing other ventures and

23     shows because if contracted with the bigger promotion, presumably the

24     wrestler is receiving consideration that outweighs life as an independent

25     wrestler.

26  202.  Plaintiff sought other business relationships throughout his career

27     including in and around June 2020 through the present.

28

203.  Defendant, at all times referenced and mentioned herein, was well aware that Plaintiff was an independent wrestler and that in order to make a sustainable income from wrestling the independent wrestler must seek multiple ventures, promotions and performances in shows. Plaintiff is, and was, himself an independent wrestler and on information and belief, is, and was, involved in professional wrestling promotions at all times relevant. As such, Defendant was aware that Plaintiff needed to pursue relationships with multiple promotions. It was widely known in the professional wrestling community, of which defendant was a part, that Plaintiff's contract with Impact was not exclusive.

204.  In addition to being under contract with Impact Wrestling, plaintiff had past, current and at least potential relationships with the over thirty wrestling promotors and promotions in referenced in Defendant's First Statement through Twenty-Sixth Statement and Defendant's Video, including, but not limited to, Impact Wrestling, PWE and ECWA Wrestling.

205.  Defendant published the statements as specifically described above and incorporated herein, as

    a.  Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

    b.  Defendant's Video

206.  Defendant has been monitoring Plaintiff's professional wrestling career, especially after Defendant's partner cheated on Defendant with an unknowing Plaintiff, that is to say that Plaintiff was unaware of the relationship that Defendant had with the partner. As such, Defendant was aware that his call to action directed to the over thirty wrestling promotors and promotions referenced in Defendant's First Statement through Twenty-Sixth Statement and Defendant's Video targeted Plaintiff's past, present and future business relationships, i.e., contractual relationships,

and that the response that Defendant sought, and seeks, is that the over thirty wrestling promotors and promotions, never work with and create any relationship or contract with Plaintiff that would result in Plaintiff receiving consideration, monetary, fame, notoriety, or otherwise, related to professional wrestling.

207.  Defendant's statements were a call to action for every promotor in professional wrestling to agree to ban, blackball and prevent Plaintiff from being a part of, doing business with and in, and deriving any benefit, e.g. money, fortune, fame, notoriety, or otherwise from professional wrestling.

208.  Defendant's statements were also a call to action to prevent Plaintiff from income related to his promotion of professional wrestling via social media, YouTube, Patreon, Cameo, etc.

209.  Defendant used false statements of fact that destroyed Plaintiff's reputation and otherwise placed Plaintiff in a false light offensive to the reasonable person by painting falsely that Plaintiff committed offensive or criminal acts, including that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without consent; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

210.  Defendant's statements were false and Plaintiff did not, and had not, (1) assaulted women; (2) committed a sexual battery on women; (3) committed (1) and (2) in a manner that would be considered a felony;(4) engage in sexual acts with women without consent; and/or (5) forced women to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

211.  Defendant's conduct was intended by each defendant, or carried out in

reckless disregard, and otherwise was substantially certain to result in loss Plaintiff's relationships, including those contractual, business, and financially beneficial to Plaintiff.

212.  As a result of Defendant's conduct, at least to date PWE and ECWA Wrestling have expressly agreed to ban, blackball and prevent Plaintiff from being a part of, doing business with and in, and deriving any income from professional wrestling. Impact Wrestling has also terminated its contract with Plaintiff.

213.  As a result of Defendant's conduct, Plaintiff did lose hundreds of subscribers, and thus income, from promotions related to social media, YouTube, Patreon, Cameo, etc.

214.  Defendant has lost income and business opportunity as a result of Defendants conduct in publishing,

    a. Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

    b. Defendant's Video.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## VI.  CLAIM VI
(Negligent Interference with Prospective Economic Advantage against defendant)

215.  Plaintiff incorporates by reference paragraphs 1 through 214 as though fully set forth herein.

216.  In October 2019, it was widely reported in the wrestling community, including through an online news reporting agency called

SoCalUncensored.com, that Plaintiff "signed a multi-year contract with Impact Wrestling. This marks his return to the promotion, as he was previously under contract with the company from 2012 to 2013." Impact Wrestling is one of the larger and more successful wrestling promotions that are more recognized by the general public, for example like WWE. As such, it was well known that the "Joey Ryan" character was a commodity sought after by one of the top wrestling promotions, i.e., believed to be entertaining and would draw viewer interest. Although Plaintiff was "under contract" with Impact Wrestling, Plaintiff was free to pursue his ventures and promotions as an independent wrestler, which is not the usual case. With the exception of Plaintiff's Impact contract, usually the independent wrestler is not free to wrestle with, and in, other promotions, without the consent of the promotion. The professional wrestler is no longer "independent" and is disincentivized from pursuing other ventures and shows because if contracted with the bigger promotion, presumably the wrestler is receiving consideration that outweighs life as an independent wrestler.

217. Plaintiff sought other business relationships throughout his career including in and around June 2020 through the present.

218. Defendant, at all times referenced and mentioned herein, was well aware that Plaintiff was an independent wrestler and that in order to make a sustainable income from wrestling the independent wrestler must seek multiple ventures, promotions and performances in shows. Plaintiff is, and was, himself an independent wrestler and on information and belief, is, and was, involved in professional wrestling promotions at all times relevant. As such, Defendant was aware that Plaintiff needed to pursue relationships with multiple promotions. It was widely known in the professional wrestling community, of which defendant was a part, that

Complaint for Damages and
Demand for Jury Trial

Plaintiff's contract with Impact was not exclusive.

219.  In addition to being under contract with Impact Wrestling, plaintiff had past, current and at least potential relationships with the over thirty wrestling promotors and promotions in referenced in Defendant's First Statement through Twenty-Sixth Statement and Defendant's Video, including, but not limited to, Impact Wrestling, PWE and ECWA Wrestling.

220.  Defendant published the statements as specifically described above and incorporated herein, as

      a.  Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

      b.  Defendant's Video

221.  Defendant has been monitoring Plaintiff's professional wrestling career, especially after Defendant's partner cheated on Defendant with an unknowing Plaintiff, that is to say that Plaintiff was unaware of the relationship that Defendant had with the partner. As such, Defendant was aware that his call to action directed to the over thirty wrestling promotors and promotions referenced in Defendant's First Statement through Twenty-Sixth Statement and Defendant's Video targeted Plaintiff's past, present and future business relationships, i.e., contractual relationships, and that the response that Defendant sought, and seeks, is that the over thirty wrestling promotors and promotions, never work with and create any relationship or contract with Plaintiff that would result in Plaintiff receiving consideration, monetary, fame, notoriety, or otherwise, related to professional wrestling.

222.  Defendant's statements were a call to action for every promotor in professional wrestling to agree to ban, blackball and prevent Plaintiff from being a part of, doing business with and in, and deriving any benefit, e.g. money, fortune, fame, notoriety, or otherwise from professional wrestling.

Complaint for Damages and
Demand for Jury Trial

223.  Defendant's statements were also a call to action to prevent Plaintiff from income related to his promotion of professional wrestling via social media, YouTube, Patreon, Cameo, etc.

224.  Defendant used false statements of fact that destroyed Plaintiff's reputation and otherwise placed Plaintiff in a false light offensive to the reasonable person by painting falsely that Plaintiff committed offensive or criminal acts, including that (1) Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without consent; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

225.  Defendant's statements were false and Plaintiff did not, and had not, (1) assaulted women; (2) committed a sexual battery on women; (3) committed (1) and (2) in a manner that would be considered a felony;(4) engage in sexual acts with women without consent; and/or (5) forced women to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

226.  Defendant's conduct was negligent, and otherwise was substantially certain to result in loss Plaintiff's relationships, including those contractual, business, and financially beneficial to Plaintiff.

227.  As a result of Defendant's conduct, at least to date PWE and ECWA Wrestling have expressly agreed to ban, blackball and prevent Plaintiff from being a part of, doing business with and in, and deriving any income from professional wrestling. Impact Wrestling has also terminated its contract with Plaintiff.

228.  a result of Defendant's conduct, Plaintiff did lose hundreds of subscribers, and thus income, from promotions related to social media,

YouTube, Patreon, Cameo, etc.

229.  Defendant has lost income and business opportunity as a result of Defendants conduct in publishing,

    a. Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

    b. Defendant's Video.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## VII.  CLAIM VII
(Intentional Infliction of Emotional Distress against defendant)

230.  Plaintiff incorporates by reference paragraphs 1 through 229 as though fully set forth herein.

231.  Defendant published the statements as specifically described above and incorporated herein, as

    a. Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

    b. Defendant's Video

232.  Defendant's conduct was outrageous.

233.  Defendant's conduct was intended by each defendant, or carried out in reckless disregard, to cause Plaintiff emotional distress.

234.  Plaintiff suffered severe emotional distress.

235.  Defendant's conduct was a substantial factor in causing Plaintiff's emotional distress.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of

1
2
$5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

3
WHEREFORE, Plaintiff prays for judgment as set forth below.

4
### VIII.  CLAIM VIII
5
(Negligent Infliction of Emotional Distress against Defendant)

6
7
236.  Plaintiff incorporates by reference paragraphs 1 through 235 as though fully set forth herein.

8
9
237.  Defendant published the defamatory statements as specifically described above and incorporated herein as,

10
11
      a.  Defendant's First Statement through Defendant's Twenty-Sixth Statement; and

12
      b.  Defendant's Video

13
14
15
16
17
238.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

18
239.  Defendant was at least negligent.

19
240.  Plaintiff suffered severe emotional distress.

20
21
241.  Defendant's negligent conduct was a substantial factor in causing Plaintiff's emotional distress.

22
23
24
25
26
WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

27
WHEREFORE, Plaintiff prays for judgment as set forth below.

28

## IX.  CLAIM IX
(Injunctive Relief - against defendant)

242.  Plaintiff incorporates by reference paragraphs 1 through 241 as though fully set forth herein.

243.  Defendant has caused irreparable harm to Plaintiff's businesses, in reputation, in income, in the goodwill in the business that no amount of damages could adequately compensate Plaintiff for injuries he sustained, is sustaining and will sustain, because defendant's defamatory statements continue to be posted on internet websites such as Twitter, and defendant continue to assert that the statements are true thereby destroying Plaintiff's reputation and business in an ongoing and continuous manner.

244.  Defendant continues to publish the defamatory statements on social media making it impossible for Plaintiff to practice as a professional wrestler and wrestling promotor and thus limiting Plaintiff's income, making the harm ongoing.

245.  Defendant's conduct is a substantial factor in Plaintiff's ongoing harm.

246.  Plaintiff prays this court for an order enjoining defendant, and each of them, from making and publishing any, and all, defamatory statements that (1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

247.  Plaintiff prays this court for an injunction ordering defendants, and each of them, to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published, specifically defendant should retract and take down any, and all, defamatory statements made and published by defendant that 1)

Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation; and any iteration of such statements.

## X. CLAIM X
(Declaratory Relief against Defendant)

248.  Plaintiff incorporates by reference paragraphs 1 through 241 as though fully set forth herein.

249.  So that Plaintiff may present to social media websites that the herein defamatory statements violate the terms and conditions of social media websites, if they do, regarding publication of false and defamatory statements that tend to harass and harm other persons, Plaintiff prays that this this court declare as false statements that 1)  Plaintiff assaulted women; (2) Plaintiff committed a sexual battery on women; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) women engaged in sexual acts with Plaintiff without the consent of those women; and/or (5) women were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

## XI. PRAYER FOR RELIEF

Plaintiff, MEEHAN, prays as to the first through eighth claims:

1.  Award Plaintiff $200,000.00 in economic damages as to each defendant or the amount lost by Plaintiff as a result of defendant's conduct multiplied by the months from June 21, 2020 to the date of the award of economic damages;

2.  Award Plaintiff $5,000,000.00 as to each defendant in non-economic damages.

3.  Order an injunction permanently restraining and enjoining defendant as

set forth in Claim VII including:

a. Preventing defendant from making and publishing the defamatory statements or any iteration of the defamatory statements as set forth above and herein;

b.  Ordering defendant to retract the defamatory statements as set forth above and herein;

c. Ordering defendant to direct any, and all, websites that defendant posted the defamatory statements as set forth above and herein, to delete the defamatory statements;

4.    Award Plaintiff his actual damages;

5.    Award Plaintiff his costs, investigatory fees and expenses to the fullest extent provided by law;

6.    Award punitive and exemplary damages against defendant and in favor of Plaintiff in the sum of $10,000,000.00 by reason of defendants', and each of them, malice, hatred, ill-will, despicable and intentional acts.

7.    Awarding Plaintiff such additional and further relief as the Court deems just and proper.

Dated:  October 20, 2020

UTZURRUM LAW OFFICES, A.P.C.


By: _____/s/ Joe Utzurrum_____
Joe Utzurrum, Attorney for Plaintiff,
JOSEPH R. MEEHAN

1  UTZURRUM LAW OFFICES, A.P.C.
   Joe Utzurrum, Esq.
   Cal Bar Number 171701
2  11620 Wilshire Blvd. Ste. 900
   Los Angeles, California 90025
3  Tele 310.887.1837
   Email joe@ulawoffices.com
4

5  Attorneys for Plaintiff, JOSEPH R.
   MEEHAN
6

7

8

9             UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  JOSEPH R. MEEHAN,            )  Case No.
                                 )
12            Plaintiff,         )  DEMAND FOR JURY TRIAL
                                 )
13        vs.                    )
                                 )
14                               )
    PELLE TSICHLIS aka PELLE     )
15  PRIMEAU                      )
                                 )
16            Defendants,        )
                                 )
17  _____ )

18        Plaintiff, JOSEPH R. MEEHAN, hereby, by and through its counsel of

19  record, request and demand that the case and matters therein be tried in

20  front of a jury.

21  Dated:  October 20, 2020

22                                UTZURRUM LAW OFFICES, A.P.C.

23

24

25                                By:  _____/s/ Joe Utzurrum_
                                  Joe Utzurrum, Attorney for Plaintiff,
26                                JOSEPH R. MEEHAN

27

28

                                              Complaint for Damages and
                                              Demand for Jury Trial